UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re ACE LIMITED SECURITIES LITIGATION | ) | MDL No. 1675 |
| | ) | |
| | ) | CLASS ACTION |
| | ) | STIPULATION OF SETTLEMENT |

This Stipulation of Settlement dated as of December 16, 2008 (the "Stipulation"), is made and entered into by and among the following Settling Parties (as defined further in Section IV hereof) to the above-entitled Litigation: (i) Lead Plaintiffs the Sheet Metal Workers' National Pension Fund and Alaska Ironworkers Pension Trust (on behalf of themselves and each of the proposed Class Members), by and through their counsel of record in the Litigation; and (ii) the Defendants ACE Limited ("ACE" or the "Company"), Evan G. Greenberg, Brian Duperreault and Philip V. Bancroft, by and through their counsel of record in the Litigation. The Stipulation is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the terms and conditions hereof.

## I. THE LITIGATION

Beginning in October 2004, three cases were brought in the United States District Court for the Southern District of New York and one case was brought in the United States District Court for the Eastern District of Pennsylvania as securities fraud class actions on behalf of purchasers of common stock of ACE. Defendants moved before the Judicial Panel on Multidistrict Litigation for the transfer and consolidation of the actions to the Eastern District of Pennsylvania. Thereafter, on May 2, 2005, the actions were transferred and consolidated to the Eastern District of Pennsylvania. The consolidated actions are referred to herein as the "Litigation."

On August 24, 2005, the Court appointed the Sheet Metal Workers' National Pension Fund and Alaska Ironworkers Pension Trust as Lead Plaintiffs pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995, and approved its selection of Coughlin Stoia Geller Rudman & Robbins LLP as Lead Counsel.

The operative complaint in the Litigation is the Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint"), filed on September 29, 2005. The Complaint alleges

violations of §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder on behalf of a class of all purchasers of the publicly traded common stock of ACE between and including October 28, 2003 and October 13, 2004.

## II. DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

The Defendants, individually and collectively, have denied and continue to deny each and all of the claims and contentions alleged by the Lead Plaintiffs in the Litigation. The Defendants expressly have denied and continue to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Litigation. The Defendants also have denied and continue to deny, *inter alia*, the allegations that Defendants made materially false or misleading statements or omissions or acted with the requisite culpable mental state, that any alleged materially false or misleading statements or omissions caused the Lead Plaintiff or the Class to suffer damage, that the prices of ACE common stock were artificially inflated by reasons of any alleged materially false or misleading statements or omissions or otherwise, and that Lead Plaintiffs or the Class were harmed by the conduct alleged in the Complaint. Defendants believe that the evidence developed to date supports their position.

Nonetheless, the Defendants have concluded that further conduct of the Litigation could be protracted, expensive, and disruptive to the management and operation of ACE's business, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. The Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation. The Defendants have, therefore, determined that it is desirable and beneficial to them that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III. CLAIMS OF THE LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

The Lead Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims. However, Lead Plaintiffs recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against the Defendants through trial and through appeals. The Lead Plaintiffs have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. The Lead Plaintiffs are also mindful of the inherent problems of proof, and possible defenses to the securities law violations asserted in the Litigation. The Lead Plaintiffs believe that the Settlement (as defined below) confers substantial benefits upon the Class in light of the risks of further litigation. Based on their evaluation, the Lead Plaintiffs and Lead Counsel have determined that the Settlement is in the best interests of the Class.

In settling this action, Lead Plaintiffs also recognize the actions ACE and the Individual Defendants have taken to address any concerns about contingent commission arrangements and the potential steering of clients, including:

On November 2, 2004, ACE instituted a set of Business Practice Guidelines to assure ongoing underwriting best practices, adherence to the highest standards of professional ethics and antitrust compliance in its domestic operations;

ACE's Business Practice Guidelines have been revised and reissued from time to time since 2004 to assure ongoing underwriting best practices, adherence to the highest standards of professional ethics and antitrust compliance in its domestic operations;

ACE's Business Practice Guidelines prohibit any behavior involving price fixing, bid-rigging, agreeing with competitors or brokers to allocate customers between ACE and its competitors, kick-backs, or any other anticompetitive practices;

ACE's Business Practice Guidelines prohibit payment of contingent commissions to brokers relating to the placement of excess casualty insurance policies, and require approval by ACE's CEO or General Counsel for the payment of contingent commissions in connection with any other U.S.-based business;

ACE's Business Practice Guidelines reflect ACE's policy to try to ensure that customers have access to information regarding pricing, terms and conditions, including the broker's commission, whether such disclosure is done by ACE or the customer's broker;

On April 25, 2006, ACE Limited, ACE Group Holdings, Inc., and their insurer subsidiaries authorized to transact business in the State of New York settled all issues arising from their underwriting practices and payment of contingent commissions with Attorney Generals of New York, Connecticut, and Illinois, without admission of liability ("New York / Connecticut / Illinois Settlement Agreement");

The New York / Connecticut / Illinois Settlement Agreement required ACE to disclose information regarding producer compensation on its website;

The New York / Connecticut / Illinois Settlement Agreement required ACE to disclose additional information on producer compensation on request by policyholders;

The New York / Connecticut / Illinois Settlement Agreement required ACE to comply with its previously-instituted Business Practice Guidelines;

On May 14, 2007, ACE settled all issues arising from its underwriting practices and payment of contingent commissions with the Attorney General and Insurance Department of the Commonwealth of Pennsylvania, without admission of liability ("Pennsylvania Settlement Agreement");

ACE agreed in the Pennsylvania Settlement Agreement to comply with its previously-established business practice guidelines;

On October 24, 2007, ACE Group Holdings, Inc. and its U.S.-domiciled subsidiaries settled all issues arising from their underwriting practices and payment of contingent commissions with the Office of the Attorney General of the States of Florida, Hawaii, Maryland, Michigan, Oregon, Texas, and West Virginia, the Commonwealth of Massachusetts, the District of Columbia, the Florida Department of Financial Services, and the Florida Office of Insurance Regulation, without admission of liability ("Multi-State Settlement Agreement");

ACE agreed in the Multi-State Settlement Agreement to comply with its Business Practice Guidelines in its domestic operations;

During the period of 2006 through and including 2008, ACE's offices situated and issuing policies in the United States have ceased all payments of contingent commissions to any non-exclusive agent or broker relating to the placement of any excess casualty insurance policy.

These steps taken by ACE and the Individual Defendants have substantially benefited both ACE and the Company's shareholders.

## IV. TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Lead Plaintiffs (for themselves and the proposed Class Members) and the Defendants, by and through their respective counsel or attorneys of record, that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation, as follows.

### 1. Definitions

As used in the Stipulation, the following terms have the meanings specified below:

1.1 "Authorized Claimant" means any Class Member whose claim for recovery has been allowed pursuant to the terms of the Stipulation.

1.2 "ACE" means ACE Limited and any of its successor(s).

1.3 "Claimant" means any Class Member who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.4 "Claims Administrator" means Gilardi & Co., LLC.

1.5 "Class" means all Persons who purchased or acquired shares of ACE common stock between October 28, 2003 and October 13, 2004, inclusive and who suffered a loss thereby. Excluded from the Class are the Individual Defendants, their heirs, affiliates, successors, and assigns and the current or former officers and directors of ACE. Also excluded from the Class are those Persons who timely and validly request exclusion from the Class pursuant to the Notice of Pendency and Proposed Settlement of Class Action.

1.6 "Class Member" or "Member of the Class" means a Person who falls within the definition of the Class as set forth in ¶1.5 above.

1.7 "Class Period" means the period between and including October 28, 2003 and October 13, 2004.

1.8 "Defendants" means ACE and the Individual Defendants, as defined below.

1.9 "Effective Date" means the first date by which all of the events and conditions specified in ¶7.1 of the Stipulation have been met and have occurred.

1.10 "Escrow Agent" means the law firm of Coughlin Stoia Geller Rudman & Robbins LLP or its successor(s).

1.11 "Final" means when the last of the following with respect to the Judgment approving the Stipulation, substantially in the form of Exhibit B hereto, shall occur: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken, which date shall be deemed to be thirty (30) days following the entry of the Judgment, unless the date to take such an appeal shall have

been extended by Court order or otherwise, or unless the 30th day falls on a weekend or a Court holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such 30th day; and (iii) if such motion to alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, or dismissal of the appeal, and in such a manner as to permit the consummation of the Settlement substantially in accordance with the terms and conditions of this Stipulation. For purposes of this paragraph, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of the Settlement, but shall not include any appeal that concerns only the issue of attorneys' fees and reimbursement of costs or the Plan of Allocation of the Settlement Fund.

1.12 "Individual Defendants" means Evan G. Greenberg, Brian Duperreault and Philip V. Bancroft.

1.13 "Judgment" means the judgment to be rendered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit B.

1.14 "Lead Counsel" means Coughlin Stoia Geller Rudman & Robbins LLP.

1.15 "Lead Plaintiffs" means Sheet Metal Workers' National Pension Fund and Alaska Ironworkers Pension Trust.

1.16 "Notice Order" means the Order to be entered by the Court granting preliminary approval of the Settlement and providing for notice as contemplated by 3.1 of this Stipulation. A copy of the Notice Order proposed by the Settling Parties is attached hereto as Exhibit A.

1.17 "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association,

government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.18 "Plaintiffs" means collectively the Lead Plaintiffs and any plaintiff that has appeared in the Litigation.

1.19 "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of expenses of notice and administration of the Settlement, Taxes and Tax Expenses, and such attorneys' fees, costs, expenses and interest as may be awarded by the Court. Any Plan of Allocation is not part of the Stipulation and Defendants and their Related Parties shall have no responsibility therefor or liability with respect thereto.

1.20 "Related Parties" means each and all of Defendants' past or present directors, officers, employees, partners, insurers, co-insurers, reinsurers, agents, controlling shareholders, attorneys, accountants, auditors, advisors, investment advisors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, related or affiliated entities, any entity in which a Defendant has a controlling interest, any members of an Individual Defendant's immediate family, or any trust of which an Individual Defendant is the settlor or which is for the benefit of an Individual Defendant's family.

1.21 "Released Claims" shall collectively mean all claims (including "Unknown Claims" as defined in ¶1.26 hereof), demands, rights, liabilities and causes of action of every nature and description whatsoever, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore has existed, including, without limitation, claims for negligence, gross negligence, breach of duty of care and/or breach of duty of loyalty, fraud, breach of fiduciary duty, or violations of any state or federal statutes, rules or regulations or common law principles that have been asserted or that might have been asserted by

Plaintiffs or any Class Member, individually, collectively, derivatively, or in any other capacity, against the Defendants or their Related Parties arising out of or related to their purchase or acquisition of the common stock of ACE by Plaintiffs or any Class Member during the Class Period and the acts, facts, statements, or omissions that were or could have been alleged by any of the Plaintiffs in the Litigation.

1.22 "Released Persons" means each and all of the Defendants and each and all of their Related Parties.

1.23 "Settlement" means the agreement between and among the Settling Parties to settle, compromise, and dismiss this case with prejudice and on the merits under the terms, conditions, and provisions set forth in this Stipulation.

1.24 "Settlement Fund" means the principal amount of One Million Nine Hundred Fifty Thousand ($1,950,000) in cash paid to the Escrow Agent pursuant to ¶2.1 of this Stipulation, plus all interest earned thereon pursuant to ¶¶2.1 and 2.2.

1.25 "Settling Parties" means, collectively, each of the Defendants, and the Plaintiffs on behalf of themselves and the Class Members.

1.26 "Unknown Claims" shall collectively mean all claims, demands, rights, liabilities, and causes of action of every nature and description which Plaintiffs or any Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Released Persons which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to the Settlement.

**2. The Settlement**

**a. The Settlement Fund**

2.1 In consideration of the terms of this Stipulation, ACE will pay or cause to be paid the One Million Nine Hundred Fifty Thousand ($1,950,000) in the following manner:

Within ten (10) business days following the entry of the Notice Order or other order preliminarily approving the Settlement by the Court, ACE shall pay, or cause to be paid, One Million Nine Hundred Fifty Thousand Dollars ($1,950,000) into an interest-bearing escrow account established by the Escrow Agent (the "Settlement Fund").

**b. The Escrow Agent**

2.2 The Escrow Agent may invest the Settlement Fund deposited pursuant to ¶2.1 hereof in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. The Escrow Agent shall bear all risks related to investment of the Settlement Fund. Following the deposit of funds in the Settlement Fund as provided herein, each of the Defendants and the Related Parties shall have no responsibility or liability whatsoever in connection with any aspect of the management of the Settlement Fund, including without limitation any investment of the Settlement Fund by the Escrow Agent.

2.3 The Escrow Agent shall not disburse the Settlement Fund except as provided in the Stipulation, by an order of the Court, or with the written agreement of counsel for ACE.

2.4 Subject to further order and/or direction as may be made by the Court, the Escrow Agent is authorized to execute such transactions on behalf of the Class Members as are consistent with the terms of the Stipulation.

2.5 All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or further order(s) of the Court.

2.6 Prior to the Effective Date, Lead Counsel may authorize the Escrow Agent to pay the actual costs and expenses reasonably and actually incurred in connection with providing notice of the settlement to the Class and administering the Settlement.

**c. Taxes**

2.7 (a) The Settling Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. §1.468B-1. In addition, the Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this ¶2.7, including the "relation-back election" (as defined in Treas. Reg. §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b) For the purpose of §1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)). Such returns (as well as the election described in ¶2.7(a) hereof) shall be consistent with this ¶2.7 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.7(c) hereof.

(c) All (a) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Defendants or their Related Parties with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a

"qualified settlement fund" for federal or state income tax purposes ("Taxes"), and (b) expenses and costs incurred in connection with the operation and implementation of this ¶2.7 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this ¶2.7) ("Tax Expenses"), shall be paid out of the Settlement Fund; in no event shall the Defendants or their Related Parties have any responsibility for or liability with respect to the Taxes or the Tax Expenses. The Escrow Agent shall indemnify and hold each of the Defendants and their Related Parties harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement Fund and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither the Defendants nor their Related Parties are responsible therefor nor shall they have any liability with respect thereto. The parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this ¶2.7.

**d. Termination of Settlement**

2.8 In the event that the Stipulation is not approved, or is terminated, canceled, or fails to become effective for any reason, the Settlement Fund, including accrued interest, less reasonable costs and expenses actually incurred and properly due and owing in connection with the settlement provided for herein, including, without limitation, for the class notice, administration and Taxes, shall be refunded to ACE, as provided in ¶7.3 below.

**3. Notice Order and Settlement Hearing**

3.1 Promptly after execution of the Stipulation, the Settling Parties shall submit the Stipulation together with its Exhibits to the Court and shall apply for entry of an order (the "Notice Order"), substantially in the form of Exhibit A hereto, requesting, *inter alia*, the preliminary approval of the Settlement as set forth in this Stipulation, and approval for mailing the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), substantially in the form of Exhibit A-1 hereto and publication of a summary notice, substantially in the form of Exhibit A-3 hereto. The Notice shall include the general terms of the settlement set forth in this Stipulation, the proposed Plan of Allocation, the general terms of the Fee and Expense Application and the date of the Settlement Hearing.

3.2 Lead Counsel shall request that after notice is given, the Court hold a hearing (the "Settlement Hearing") and approve the settlement of the Litigation as set forth herein. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation and the Fee and Expense Application.

**4. Releases**

4.1 Upon the Effective Date, as defined in ¶1.9 hereof, the Lead Plaintiffs and each of the Class Members shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the Released Persons, whether or not such Class Member executes and delivers a Proof of Claim and Release form. With respect to any and all Released Claims against the Released Persons, the Settling Parties stipulate and agree that, upon the Effective Date, the Lead Plaintiffs shall expressly waive, and each of the Class Members shall be deemed to have waived and by operation of the Judgment shall have waived, the provisions, rights and benefits of California Civil Code §1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release,**

**which if known by him or her must have materially affected his or her settlement with the debtor.**

The Lead Plaintiffs shall expressly waive, and each of the Class Members shall be deemed to have waived, and by operation of the Judgment shall have waived, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code §1542. The Lead Plaintiffs and Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows or believes to be true with respect to the subject matter of the Released Claims, but the Lead Plaintiffs shall expressly, fully, finally and forever settle and release, and each Class Member, upon the Effective Date, shall be deemed to have fully, finally and forever settled and released and by operation of the Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Lead Plaintiffs acknowledge, and by operation of the Judgment the Class Members shall have acknowledged, that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

4.2 The Proof of Claim and Release to be executed by Class Members shall release all Released Claims against the Released Persons and shall be substantially in the form contained in Exhibit A-2 hereto.

4.3 Upon the Effective Date, as defined in ¶1.9 hereof, each of the Released Persons shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged the Lead Plaintiffs, each and all of the Class Members, and Lead

Counsel from all claims (including, without limitation, Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of the Litigation or the Released Claims.

**5. Administration and Calculation of Claims, Final Awards and Supervision and Distribution of Settlement Fund**

5.1 The Claims Administrator shall administer and calculate the claims submitted by Class Members.

5.2 The Settlement Fund shall be applied as follows:

(a) to pay all the costs and expenses reasonably and actually incurred in connection with providing notice, locating Class Members, assisting with the filing of claims, administering and distributing the Settlement Fund to Authorized Claimants, processing Proof of Claim and Release forms and paying escrow fees and costs, if any;

(b) to pay the Taxes and Tax Expenses described in ¶2.7 hereof;

(c) to pay Lead Counsel attorneys' fees and expenses (the "Fee and Expense Award"), if and to the extent allowed by the Court; and

(d) after the Effective Date, to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, or the Court.

5.3 Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

(a) Within ninety (90) days after the mailing of the Notice or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the

form of Exhibit A-2 hereto, signed under penalty of perjury and supported by such documents as are specified in the Proof of Claim and Release and as are reasonably available to the Authorized Claimant.

(b) All Class Members who fail to timely submit a Proof of Claim and Release within such period, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments pursuant to the Stipulation and the settlement set forth herein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained herein, and the Judgment, including without limitation the release of the Released Claims and the dismissal with prejudice of this lawsuit.

(c) The Net Settlement Fund shall be distributed to Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court. If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any balance which still remains in the Net Settlement Fund shall be donated to an appropriate, non-profit organization.

5.4 This settlement is not a claims-made settlement and, if all conditions of the Stipulation are satisfied and the settlement becomes Final, no portion of the Settlement Fund will be returned to the Defendants or their insurers. The Defendants and their Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

5.5 No Person shall have any claim against Lead Counsel, the Claims Administrator or other entity designated by Lead Counsel based on distributions made substantially in accordance with the Stipulation and the settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

5.6 It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the settlement set forth in this Stipulation, and any order or proceeding relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect or delay the finality of the Court's Judgment approving this Stipulation and the settlement set forth therein (including the releases contained herein), or any other orders entered pursuant to this Stipulation.

**6. Lead Counsel's Attorneys' Fees and Expenses**

6.1 Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions to them from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) payment of expenses, including the fees of any experts or consultants, incurred in connection with prosecuting the Litigation, plus any interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid), as may be awarded by the Court ("Fee and Expense Award"). Lead Counsel reserves the right to make additional applications for fees and expenses incurred.

6.2 The attorneys' fees and expenses, as awarded by the Court, shall be paid to Lead Counsel from the Settlement Fund, as ordered, immediately after the Court executes an order awarding such fees and expenses. Lead Counsel may thereafter allocate the attorneys' fees and expenses among counsel for Plaintiffs in a manner in which they in good faith believe reflects the

contributions of such counsel to the institution, prosecution and resolution of the Litigation. In the event that the Effective Date does not occur, or the Judgment or the order making the Fee and Expense Award is reversed or modified, or the Stipulation is canceled or terminated for any other reason, and in the event that the Fee and Expense Award has been paid to any extent, then it shall be Plaintiffs' counsel's several obligation to refund to the Settlement Fund, or to ACE if the Judgment or Settlement is modified or does not become Final or if the Stipulation is canceled or terminated for any other reason, the fees and expenses previously paid to them from the Settlement Fund plus interest thereon at the same rate as earned by the Settlement Fund from the date of payment to the date of refund, within ten (10) business days from receiving notice from Defendants' counsel or from a court of appropriate jurisdiction.

6.3 The procedure for and the allowance or disallowance by the Court of any applications by counsel for the Plaintiffs for attorneys' fees and expenses, including the fees of experts and consultants, to be paid out of the Settlement Fund, are not part of the Settlement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement, and any order or proceedings relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this Stipulation, or affect or delay the finality of the Judgment approving the Stipulation and the Settlement (including the releases contained herein).

6.4 Defendants and their Related Parties shall have no responsibility for or liability with respect to any payment of attorneys' fees and expenses from the Settlement Fund.

**7. Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

7.1 The Effective Date of this Stipulation shall be conditioned on the occurrence of all of the following events:

(a) The Settlement Fund has been paid or caused to be paid by ACE, as required by ¶2.1 hereof;

(b) the Court has entered the Notice Order, as required by ¶3.1 hereof;

(c) the Court has entered the Judgment, or a judgment substantially in the form of Exhibit B hereto; and

(d) the Judgment has become Final, as defined in ¶1.11 hereof.

7.2 Upon the occurrence of all of the events referenced in ¶7.1 hereof, any and all remaining interest or right of ACE in or to the Settlement Fund, if any, shall be absolutely and forever extinguished. If any or all of the conditions specified in ¶7.1 hereof are not met, then the Stipulation shall be canceled and terminated subject to ¶7.4 hereof unless Lead Counsel and counsel for Defendants mutually agree in writing to proceed with the Stipulation.

7.3 Unless otherwise ordered by the Court, in the event the Stipulation shall terminate, or be canceled, or the Effective Date does not occur for any reason, then within ten (10) business days after written notification of such event is sent by counsel for Defendants to the Escrow Agent and in accordance with the terms of ¶2.8 hereof, the Settlement Fund (including accrued interest), less any expenses and costs reasonably and actually incurred pursuant to ¶2.6 hereof, shall be refunded by the Escrow Agent to the entities which deposited the Settlement Fund pursuant to written instructions from those entities. At the request of such entities or counsel to Defendants, the Escrow Agent or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, pursuant to written direction from such entities or counsel for the Defendants.

7.4 In the event that the Stipulation is not approved by the Court or the Settlement is terminated or the Effective Date does not occur in accordance with the terms of the Stipulation, the Settling Parties shall be restored to their respective positions in the Litigation as of November 29,

2008, and expressly and affirmatively reserve all defenses, arguments, and claims that have been or might later be asserted in the Litigation. In such event, the terms and provisions of the Stipulation, with the exception of ¶¶2.7, 2.8, 7.3, 7.4,7.5, 8.3, and 8.4 hereof, shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses and interest awarded by the Court to Lead Counsel shall constitute grounds for cancellation or termination of the Stipulation.

7.5 If the Effective Date does not occur, or if the Stipulation is terminated pursuant to its terms, neither the Lead Plaintiffs, Plaintiffs or Lead Counsel, shall have any obligation to repay any amounts actually and properly disbursed for notice costs pursuant to ¶¶2.1 and 2.6. In addition, any expenses already incurred and properly chargeable pursuant to ¶¶2.1 and 2.6 hereof at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agent in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶¶2.8, 6.2, and 7.3 hereof.

7.6 If prior to the Settlement Hearing, the aggregate number of shares of ACE common stock purchased or acquired by Persons who would otherwise be Members of the Class, but who request exclusion from the Class, exceeds the percentage of the number of shares of ACE common stock traded during the Class Period specified in a separate "Supplemental Agreement" between the Settling Parties, Defendants shall have, in their sole and absolute discretion, the option to terminate this Stipulation in accordance with the procedures set forth in the Supplemental Agreement. The Supplemental Agreement will not be filed with the Court unless and until a dispute among the Settling Parties concerning its interpretation or application arises. The provisions set forth in ¶7.4 of

this Stipulation shall apply in the event of a termination of this Stipulation in accordance with the procedures set forth in the Supplemental Agreement.

7.7 If a case is commenced in respect to any Defendant under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver or conservator is appointed under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of the Settlement Fund, or any portion thereof, by or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction, then, at Lead Plaintiffs' option, as to such Defendant, the releases given and Judgment entered in favor of such Defendant pursuant to this Stipulation shall be null and void.

**8. Miscellaneous Provisions**

8.1 The Settling Parties (a) acknowledge that it is their intent to consummate the Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of the Stipulation.

8.2 The Settling Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The Settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Final Judgment will contain a statement that during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

8.3 Neither the Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement: (a) is or may be deemed

to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Defendants; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Defendants in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Defendants may file the Stipulation and/or the Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of, without limitation, claim preclusion or issue preclusion or similar defense or counterclaim.

8.4 All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information are incorporated herein and shall survive this Stipulation, pursuant to their terms. The Settling Parties and their respective counsel agree to keep the information disclosed to them in connection with this Settlement and Stipulation confidential except to the extent required by applicable law to disclose such information. The Settling Parties and their respective counsel also agree to refrain from disparaging one another in any public statements in connection with the Litigation.

8.5 All of the Exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.6 The Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

8.7 The Stipulation and the Exhibits attached hereto constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning the Stipulation or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs.

8.8 Lead Counsel, on behalf of the Class, are expressly authorized by the Lead Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to the Stipulation to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Class which they deem appropriate.

8.9 Each counsel or other Person executing the Stipulation or any of its Exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

8.10 The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

8.11 The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

8.12 The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Settling Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement. Any of the Settling Parties may file this Stipulation, the Judgment, or both, in any proceeding to enforce the terms of the Settlement, Stipulation, or Judgment.

8.13 The Stipulation and the Exhibits hereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of Pennsylvania, and the rights and obligations of the parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Pennsylvania without giving effect to that State's choice-of-law principles.

8.14 The headings contained in this Stipulation are included solely for convenience and in no way define, limit, extend, or describe the scope of the Stipulation or the intent of any of its provisions.

IN WITNESS WHEREOF, the parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys dated as of December 16, 2008.

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
TOR GRONBORG
DEBRA J. WYMAN

TOR GRONBORG

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

LAW OFFICES OF MARC S. HENZEL
MARC S. HENZEL (MSH 2062)
273 Montgomery Avenue, Suite 202
Bala Cynwyd, PA 19004
Telephone: 610/660-8000
610/660-8080 (fax)

Attorneys for Plaintiffs

SUSMAN GODFREY L.L.P.
H. LEE GODFREY
NEAL S. MANNE
JOHNNY W. CARTER

Neal Manne
NEAL S. MANNE

1000 Louisiana Street, Suite 5100
Houston, TX 77002-5096
Telephone: 713/651-9366
713/654-6666 (fax)

Attorneys for Defendants

CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 17, 2008.

s/ TOR GRONBORG

TOR GRONBORG

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: torg@csgrr.com

# Mailing Information for a Case 2:05-md-01675-TJS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **JOHNNY W. CARTER**
  jcarter@susmangodfrey.com
- **STEPHEN A. COZEN**
  scozen@cozen.com,cwilliams@cozen.com
- **GEORGE M. GOWEN , III**
  ggowen@cozen.com
- **TOR GRONBORG**
  torg@lerachlaw.com,christina@lerachlaw.com,e_file_sd@lerachlaw.com
- **MARC S. HENZEL**
  mhenzel182@aol.com
- **NEAL S. MANNE**
  nmanne@susmangodfrey.com,mreeves@susmangodfrey.com
- **UDOKA NWANNA**
  udokan@lerachlaw.com
- **DEBRA J. WYMAN**
  debraw@lerachlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**MICHAEL GEISER**
SUSMAN GODFREY LLP
1000 LOUISIANA
SUITE 5100
HOUSTON, TX 77002-5096

**H. LEE GODFREY**
SUSMAN GODREY LLP
1000 LOUISIANA
SUITE 5100
HOUSTON, TX 77002-5096

**JEFFREY SEELY**

SUSMAN GODFREY LLP
1000 LOUISIANA
SUITE 5100
HOUSTON, TX 77002-5096